UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY LEE HORTON,

        Petitioner,                               Civil No. 04-10060
                                                        Honorable David M. Lawson

v.

ANDREW JACKSON,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Michigan prisoner Ricky Lee Horton has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for possession with intent to deliver over 650 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(i), and attempted possession of between 225 and 650 grams of cocaine, Mich. Comp. Laws §§ 333.7401(2)(a)(ii), 750.92, and his sentences totaling forty to sixty years in prison. He argues that the convictions and sentences are unconstitutional because the sentencing judge relied on facts not submitted to the jury or proven beyond a reasonable doubt, his sentence violates the Eighth Amendment proportionality requirement, and the state court scheduling judge abused her discretion in denying his trial-day motion to adjourn the trial. The case has been held in abeyance while the petitioner returned to state court to exhaust remedies. When the petitioner returned to this court and filed an amended petition, the respondent filed an answer asserting that an adequate and independent state procedural ruling bars review of some of the claims by this Court, and the state courts' disposition of the rest of them did not result in an objectively unreasonable application of clearly established Supreme Court law. The Court need not address the procedural default argument because the petitioner's claims do not warrant habeas relief on the merits. Therefore, the Court will deny the petition.

I.

In February 2000, the Detroit police, working with United States postal inspectors, monitored the controlled delivery of two packages containing cocaine to the petitioner and his son, Ricky Rashad Horton. Postal Inspector Bobbie Wade testified that on February 18, 2000, he was working in an airmail center in the metro-Detroit area when he identified two similar-looking packages as suspicious. Both packages were gift-wrapped, heavily taped, and bore California return addresses. One package was addressed to Keisha Samuels on Capitol Street in the City of Detroit; the other was addressed to Loretta Johnson on Prevost Street, also in the City of Detroit. Wade testified that he contacted a K-9 handler to determine if a specially trained dog would alert to the packages. The dog alerted to both packages, indicating the packages might contain illegal substances. After obtaining a search warrant, Wade opened the packages and took samples from each. Both samples tested positive for cocaine.

Wade testified that he arranged for a controlled delivery of these packages. Wade dressed as a postal delivery person while the police conducted a surveillance of both addresses. At the Capitol Street address, the petitioner's son, Ricky Rashad Horton, answered the door and stated that Keisha Samuels was inside the home. Ricky signed for the package on her behalf, signing the name "Troy Jones." Ricky left the home shortly after Wade. The police stopped his vehicle and saw cocaine in his shirt pocket.

Police Officer Carmen Diaz testified that he was part of the police surveillance team assigned to the Capitol Street house. He testified that he observed the petitioner enter and leave the house sometime after the controlled delivery occurred and after the petitioner's son had been arrested. Police Officer Jeffrey Pacholski testified that, shortly after being alerted that the petitioner had

entered the Capitol Street house, Officer Pacholski located the petitioner in a shed nearby. The petitioner was ordered to exit the shed. The police then entered the shed and found a shopping bag containing the package delivered to the Capitol Street house. The petitioner was arrested.

Several hours later, after the petitioner and his son were already in police custody, Wade delivered the second package to the home on Prevost Street. Danielle Horton signed for the package, which had been addressed to Loretta Johnson. Danielle Horton's niece testified at trial that the petitioner had warned her a day earlier that a package would be delivered to him at Prevost Street. Following a jury trial in the Wayne County, Michigan circuit court, the petitioner was convicted of possession with intent to deliver over 650 grams of cocaine, and attempted possession of between 225 and 650 grams of cocaine. On March 5, 2001, he was sentenced to consecutive terms of forty to sixty years and two to five years imprisonment, respectively.

The petitioner filed a direct appeal in the Michigan Court of Appeals raising the following claims through appointed counsel: (i) substitute counsel should have been appointed on the day of trial; and (ii) the sentence was disproportionate. The petitioner filed a *pro se* supplemental pleading raising the additional claims of Fourth Amendment violation and ineffective assistance of counsel. The Michigan Court of Appeals affirmed the petitioner's convictions and sentences. *People v. Horton*, No. 234035, 2002 WL 31950754 (Mich. Ct. App. Dec. 10, 2002). The state supreme court denied leave to appeal. *People v. Horton*, 469 Mich. 874, 668 N.W.2d 150 (2003).

The petitioner then filed a petition for a writ of habeas corpus in this Court. The petitioner raised the following claims: (i) he was denied his Sixth Amendment right to counsel because an irreconcilable conflict arose between counsel and the petitioner, of which the trial court was made aware; and (ii) he received a disproportionately harsh sentence. The Court granted the petitioner's

motion to stay the proceedings so that he could return to state court to fully exhaust his sentencing-related claim, imposed conditions under which the petitioner was required to proceed, and administratively closed the case. *See* Order Granting Petitioner's Mot. to Stay Habeas Corpus Proceeding and Administratively Closing Case [dkt. # 23].

After exhausting state court remedies, the petitioner filed a motion to reopen this habeas corpus proceeding and amend his habeas corpus petition. The Court granted the motion and ordered the respondent to file a responsive pleading. The respondent raised the procedural defense in his answer.

The petitioner's amended habeas corpus petition raises the following claims:

I. Petitioner is entitled to habeas relief and resentencing where his sentence was rendered in violation of his Sixth Amendment right to a jury trial where the judge made an upward enhancement of forty to sixty years based on facts not submitted to the jury or proven beyond a reasonable doubt.

II. Petitioner is entitled to habeas relief and resentencing where his sentence of forty to sixty years constitutes a violation of the cruel and unusual punishment clause and equal protection of the law.

III. Petitioner is entitled to habeas relief where the chief circuit court judge abused her discretion in denying his motion for adjournment on the day of trial which substantially prejudiced his defense and resulted in a failure of justice.

The respondent has filed an answer to the petition arguing that all of the petitioner's claims are barred from review in this Court because they are procedurally defaulted.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas

corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the great writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)&(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Knowles v. Mirzayance*, __ U.S. __, __, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not '"an unreasonable application of clearly established Federal law"'" for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The respondent argues that all of the petitioner's claims are barred from federal habeas review under the doctrine of procedural default. Under that doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state

law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Although ordinarily procedural-bar issues must be resolved first, "[j]udicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of the petitioner's claims first.

B.

The petitioner argues that his sentence was increased based upon facts neither proven to a jury beyond a reasonable doubt nor admitted by him. He contends that the sentencing judge increased his sentence based upon his history of drug dealing and the use of his family members in his drug-dealing enterprise. These facts, the petitioner states, were not decided by a jury, yet were used to enhance his sentence.

The petitioner argues, therefore, that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to score his sentencing guidelines that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by the petitioner. The petitioner believes that *Blakely v. Washington,* 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support his position. However, the claim that Michigan's sentencing guideline system, wherein judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in

*Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). This Court is bound by that decision. Because the petitioner's sentence fell within the statutorily-authorized maximum penalty, which was not enhanced by judicial factfinding, no Sixth Amendment violation occurred.

C.

Next, the petitioner claims that his sentences violate the Eight Amendment's ban on cruel and unusual punishment.

There is no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957 (1997). However, the Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." *Id.* at 1001 (Kennedy, J., concurring). The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994) (holding that generally, a sentence within statutory limitations does not violate the Eighth Amendment); *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (holding that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotation marks and citations omitted). As discussed above, the petitioner's sentences did not exceed the statutory maximum for any of his offenses. Accordingly,

the petitioner fails to prove an Eighth Amendment violation under which he would be entitled to habeas corpus relief.

D.

Finally, the petitioner argues that the trial court abused its discretion by denying his request for an adjournment on the first day of trial. The petitioner requested an adjournment because there had been a breakdown in the relationship with his attorney. Defense counsel confirmed the petitioner's allegation by telling the trial court that, although he had visited the petitioner in prison three times, he did not intend to visit him further.

The Sixth Amendment guarantees an accused in all criminal prosecutions the right to the assistance of counsel in his defense. U.S. Const. amend. VI. "[T]he purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial.'" *Wheat v. United States*, 486 U.S. 153, 159 (1988) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *See Chambers v. Maroney*, 399 U.S. 42, 53-54 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

*Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).

"[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Wheat v. Untied States*, 486 U.S. at 159 (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984)). Further, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than

to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Therefore, "when a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate." *Ray v. Curtis*, 21 F. App'x 333, 335 (6th Cir. 2001).

The petitioner presented a claim on direct appeal to the Michigan Court of Appeals similar to that presented here. There, the petitioner argued that the trial court erred in denying defense counsel's motion to withdraw. In response to that argument, the court of appeals held that the breakdown in the attorney-client relationship did not impact the petitioner's defense. The court considered several aspects of the petitioner's defense in reaching this conclusion:

> The record demonstrates . . . that the court elicited from defendant his reasons for requesting new counsel, and fully discussed his various complaints. Defendant complained that his counsel did not visit him frequently enough, had not obtained transcripts of an evidentiary hearing, refused to seek interlocutory review of the denial of his motion to suppress his statement, refused to move to suppress the search warrants because defendant lacked standing, and had not talked with defendant about a defense trial witness. Defendant admitted that counsel had visited him three times and defendant makes no showing on appeal that more pre-trial visits were necessary. Counsel stated that the transcripts of the evidentiary hearing were not available and that he did not intend to file an interlocutory appeal. The trial court indicated that it would not grant a stay for an appeal and this Court rarely grants interlocutory appeals by defendants regarding suppression of evidence issues; it is therefore unlikely that, had an interlocutory appeal been filed, defendant would have received any relief.
>
> Additionally, we note that counsel moved to suppress defendant's statements to the police, an evidentiary hearing on this issue was conducted, and the trial court denied the motion; therefore, the issue was preserved for appellate review . . . and it was reasonable to decide that filing an interlocutory appeal would have been frivolous.
> . . .
>
> With regard to counsel's refusal to move to quash the search warrant, we have concluded in our discussion below that defendant did not have standing to contest the search warrant for the packages, and defendant's arrest was valid. Counsel was not required to pursue frivolous motions. . . .

> During trial, defendant complained that his counsel refused to ask the witnesses questions that defendant wanted asked because counsel asserted the questions were irrelevant or collateral. The substance of defendant's proposed questions was not placed on the record. We therefore conclude that the trial court properly deferred to counsel's decision regarding the proper strategy to be followed in questioning the witnesses, . . . , and that defendant has failed to demonstrate good cause to support his request for appointment of new counsel.

*Horton*, slip op. at 1-3 (footnote omitted).

In his habeas corpus petition, the petitioner fails to advance any new arguments that would demonstrate that counsel was not an effective advocate, nor does he point to any facts that contradict the state appellate court's finding that counsel provided effective assistance. Rather, using different verbiage, the petitioner simply recasts his old argument that his constitutional rights were violated when the trial court refused to appoint substitute counsel to ameliorate the petitioner's poor relationship with his attorney. But without any indication that the conflict negatively impacted the defense, evidence of conflict is insufficient to establish the denial of the constitutional right to counsel; the "constitutional concern" is whether the petitioner received an "effective advocate." *Ray*, 21 F. App'x at 335. Since the petitioner has failed to show that he had not been provided with such an "effective advocate," he is not entitled to habeas relief on this claim.

### III.

The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: March 16, 2010

> **PROOF OF SERVICE**
>
> The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 16, 2010.
>
>                                 s/Teresa Scott-Feijoo
>                                 TERESA SCOTT-FEIJOO